UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| HIEU TRUNG NGUYEN, | ) ) | No. C 04-1124 SBA |
| Petitioner, | ) ) | **ORDER DENYING PETITION FOR WRIT OF HABEAS** |
| vs. | ) ) | **CORPUS ON ALL CLAIMS** |
| DAVID L. RUNNELS, Warden, | ) ) |  |
| Respondent. | ) ) |  |
| _____ | ) |  |

**INTRODUCTION**

This matter comes before the Court on Hieu Trung Nguyen's petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons discussed below, the petition is DENIED.

**BACKGROUND**

**I.     Procedural History**

On April 6, 2001, after a jury trial, Nguyen was convicted in the Santa Clara County Superior Court of one count of murder in the second degree (CAL. PENAL CODE § 187) and one count of assault with a deadly weapon (CAL. PENAL CODE § 245(a)(1)), along with enhancements for personally using a knife (CAL. PENAL CODE § 12022(b)(1)) and inflicting great bodily injury (CAL. PENAL CODE § 12022.7). Clerk's Transcript (CT) 980, 984. On September 21, 2001, Nguyen was sentenced to state prison for a total of 23 years to life. Reporter's Transcript (RT) 1131. On June 25, 2003, the California Court of Appeal affirmed Nguyen's convictions and sentence. Resp't Ex. 7. On September 17, 2003, the California Supreme Court summarily denied his petition for review.

Nguyen also filed a petition for writ of habeas corpus in the California Court of Appeal, which the court heard concurrently with the direct appeal and summarily denied on June 25, 2003. On July 30, 2003, Nguyen petitioned the California Supreme Court for review of the denial of his habeas

1    petition, which was summarily denied on September 22, 2003.

2         On March 22, 2004, Nguyen filed this federal habeas petition, in which he asserts violations

3    of the Fifth, Sixth, and Fourteenth Amendments.

4         On February 27, 2006, this Court issued an Order to Show Cause directing the State to file an

5    answer. *See* Docket No. 10.  On July 17, 2006, the State filed an Answer [Docket No. 23], and on

6    December 12, 2006, Nguyen filed a Traverse [Docket No. 32].

7  **II.    Statement of the Facts**

8         The California Court of Appeal summarized the facts as follows:[1]

9         Two rival Milpitas High School factions scheduled a fight for July 20, 2000.
10    Defendant belonged to the Vietnamese faction, which consisted of a group of
      Vietnamese individuals.  Jeffrey Rogers, the murder victim, belonged to the
11    Sunnyhills faction, which consisted of Caucasians, African Americans and Latinos.

12         Before the scheduled start of the fight, members of the Vietnamese faction met at
      Steven Nguyen's house.  They brought with them a duffel bag containing four or five
13    machetes.  Chau Phi, one of those present, called defendant and told him to come to
      the fight.

14         The Vietnamese group traveled to the site of the planned fight where they met other
      Vietnamese faction members.  When time passed with no sign of the Sunnyhills
15    faction, the group began walking toward a nearby 7-Eleven.

16         Members of the Sunnyhills faction were gathering at the 7-Eleven. Jeffrey Rogers
      was among those present at the 7-Eleven.
17
           When the Vietnamese faction arrived at the 7-Eleven, the two groups started cursing
18    and hurling insults. The Sunnyhills group observed the Vietnamese group's duffel bag
      with the machetes.  They yelled for the Vietnamese group to put down their weapons
19    and urged them to fight with their fists.  Unlike the Vietnamese faction, the Sunnyhills
      group was unarmed.
20
           Chau Phi pushed Carlos Castagnetto, who belonged to the Sunnyhills group.
21    Castagnatto then punched Phi, thereby starting the melee. Phi, who was holding a box
      cutter knife, swung the knife and cut Castagnetto in the face.
22
           Defendant arrived at the 7-Eleven in his Black Toyota.  A 7-Eleven worker saw
23    defendant standing by the open trunk of his car, holding a sword with a long curved
      silver blade.  Defendant watched the fight and then jogged into the fray.  Defendant
24    swung his sword at a Sunnyhills member, Deante Copeland but Copeland dodged the

25

26         [1]    The California Court of Appeal decision is the "last reasoned decision" of the state court, so the
      Court will apply the standards of § 2254(d) to that decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04
27    (1991); *Plumlee v. Del Papa*, 465 F.3d 910, 917-918 (9th Cir. 2006).

28                                                              2

stroke.  Defendant then ran to where Rogers was fighting. Copeland was seen standing over and punching a Vietnamese member on the ground.

Billy Fry was stabbed from behind in the neck almost as soon as the fight started but did not see who stabbed him.  Fry saw defendant, who was holding the sword, approach Rogers.  Defendant was swinging his sword from side to side, while Rogers retreated from the blade.  Fry said no one was within 15 feet of defendant and Rogers when defendant swung at Rogers.  Fry did not see anyone on the ground being beaten.

Fry saw defendant stab Rogers in the left side, near the ribs.  After being stabbed, Rogers kicked defendant away.  Fry ran over to Rogers, grabbed him by the shirt, and said "let's go."  Fry, Rogers, and two other Sunnyhills members, one of whom had been cut in the arm, drove off in their van.  Rogers was bleeding profusely from his side.  They drove to Payne's house and called police and paramedics but Rogers died from his wounds.

Kurtis Helm, a Sunnyhills member who was cut during the fight, testified that he did not know who cut him.  He also testified that he did not see any Vietnamese individual on the ground being kicked.

According to Natalie Conlan, defendant was swinging the sword while the crowd backed away.  She saw one individual run up to defendant and saw defendant stab that person.  She saw another person run up to defendant, and saw defendant stab that person in the lower left side.  She saw a third person approach defendant, and saw defendant make a stabbing motion, but was not sure if defendant had injured this person.  Conlan said defendant was not retreating.  According to Conlan, defendant was moving forward aggressively to meet the other individuals before he stabbed them.  She saw defendant put the bloody sword on the floor of his car.

After the fight, the Vietnamese faction congregated at Steven's house.  Defendant was holding his bloody sword.  He bragged about cutting several people and said he stabbed one person.  Members of the Vietnamese group later denied hearing this bragging.  They also denied telling the police that defendant had bragged.  They were impeached with their videotaped police interviews, in which they said defendant boasted about cutting and stabbing individuals.

An autopsy revealed that Rogers's wounds were consistent with defendant's sword.  The machetes recovered from Steven's house could not have made Rogers's wounds.

Defendant's interview with Sergeant Sequeira was introduced.  Defendant initially denied being present during the fight.  When pressed, defendant admitted he was lying, said he had arrived after the fight had already started, and said that he never entered the fray.  He initially denied going to Steven's house but then admitted that he had been present.

Upon further questioning, defendant said Phi called him and asked him to come as backup for the fight.  When defendant arrived at the 7-Eleven, he saw the fight in progress, and observed Phi was bloody and needed help so he brought Phi to his car.  At this point, defendant still denied being in the fight.

Later in the interview, defendant admitted using the sword but said that he used it in self-defense and to help Phi.  Defendant said he was attacked by five or six people and swung the sword to fend them off. Defendant acknowledging [sic] being aware that

3

1    he stabbed someone but said that he had never meant to cause anyone injury.

2    ***Defense***

3    Defendant claimed that he acted in his self-defense and in defense of Phi. He testified
     that on the day of the fight, Phi paged him and asked for a ride home. When he
4    arrived to pick up Phi, he saw that there was fighting. He saw Phi on the ground
     being beaten by seven or eight people. Phi was bleeding from a cut on his head and
5    there was blood on Phi's clothes. Defendant wanted to assist Phi so he grabbed the
     sword. When defendant approached the group attacking Phi, several members of the
6    group fled.   Others approached defendant, and began to punch and kick him. In
     response, defendant swung the knife. He did not mean to stab anyone but believed
7    he might have stabbed someone.

8    Darius Marzette testified that he did not see defendant trying to protect anyone on the
     ground. He said he saw defendant confronting Rogers, waving the sword back and
9    forth. Marzette said Rogers appeared to be timing the motion of the blade in order to
     make his move. Rogers rushed forward and defendant stabbed him. Angela Vargas
10   said she saw Rogers trying to hit his attacker before being stabbed.

11   Donald Hand, the assistant principal at Milpitas High School, testified about Rogers's
     prior assaultive conduct. According to Hand, in October 1998, Hand saw Rogers
12   beating up another boy at school. Rogers was throwing punches and the other boy
     was huddling to avoid the blows. Rogers later told the police that he had beaten up
13   the same boy the previous day. Rogers said he did it because he was bored.

14   Phi testified. He denied calling defendant and asking him to join the fight. Phi said
     he paged defendant the morning of the fight to ask him for a ride. According to Phi,
15   he only asked defendant for a ride home; he did not ask defendant to join the fight.
     Phi testified that at some point during the fight he was knocked to the ground. Phi
16   said he was beaten and kicked by several people. He said he remembered seeing the
     sword used by defendant in defendant's car during the days before the fight.

17
     Chuang Chang testified that the sword defendant used was one Chang had obtained
18   from a friend. Chang said he had left the sword in defendant's car.

19   *People v. Nguyen*, No. H023622, slip op. at 2-6 (Cal. Ct. App. June 25, 2003) (Resp't Ex. 7 at 2-6).

20                                        **LEGAL STANDARDS**

21        The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides that an

22   application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court

23   shall not be granted with respect to any claim that was adjudicated on the merits in state court

24   proceedings unless the adjudication of the claim either "(1) resulted in a decision that was contrary to,

25   or involved an unreasonable application of, clearly established Federal law, as determined by the

26   Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

27   determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C.

28                                              4

1   § 2254(d).  With respect to the second prong, the AEDPA requires a district court to presume correct

2   any determination of a factual issue made by a state court unless the petitioner rebuts the presumption

3   of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  It is error for a federal

4   court to review *de novo* a claim that was adjudicated on the merits in state court.  *See Price v. Vincent*,

5   538 U.S. 634, 638-43 (2003).  A state court has "adjudicated" a petitioner's constitutional claim "on

6   the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief

7   on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the

8   basis of a procedural or other rule precluding state court review on the merits.  *Baker v. Fleming*, 423

9   F.3d 1085, 1092 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 2041 (2006); *Lambert v. Blodgett*, 393 F.3d

10  943, 969 (9th Cir. 2004), *cert. denied*, 126 S. Ct. 484 (2005).

11          In any event, habeas relief is warranted only if the constitutional error at issue is a structural

12  error or had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Penry*

13  *v. Johnson*, 532 U.S. 782, 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993));

14  *see also DePetris v. Kuykendall*, 239 F.3d 1057, 1061 (9th Cir. 2001) (exclusion of evidence was an

15  unreasonable application of federal law and had a substantial and injurious effect on verdict).

16          **A.      Clearly Established Federal Law**

17          Under § 2254(d)(1), a state prisoner may obtain habeas relief with respect to a claim adjudicated

18  on the merits in state court only if the state court adjudication resulted in a decision that was "contrary

19  to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the

20  the Supreme Court of the United States."  "Clearly established federal law, as determined by the

21  Supreme Court of the United States" refers to the holdings, as opposed to the dicta, of the Supreme

22  Court's decisions as of the time of the relevant state-court decision.  *Earp v. Ornoski*, 431 F.3d 1158,

23  1182 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 2295 (2006).  "A federal court may not overrule a state

24  court for simply holding a view different from its own, when the precedent from [the Supreme] Court

25  is, at best, ambiguous."  *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).  If there is no Supreme Court

26  precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision

27  cannot be contrary to, or an unreasonable application of, clearly-established federal law.  *See Stevenson*

28                                                      5

1  *v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004), *cert. denied*, 543 U.S. 1191 (2005).  There are, however,

2  areas in which the Supreme Court has not established a clear or consistent path for courts to follow in

3  determining whether a particular event violates a constitutional right; in such an area, it may be that

4  only the general principle can be regarded as "clearly established."  *See Lockyer v. Andrade*, 538 U.

5  S. 63, 72-75 (2003).  Circuit decisions may be relevant as persuasive authority to determine whether

6  a particular state court holding is an "unreasonable application" of Supreme Court precedent or to

7  assess what law is "clearly established."  *Clark v. Murphy*, 331 F.3d 1062, 1070-71 (9th Cir. 2003),

8  *cert. denied*, 540 U.S. 968 (2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 1999).

9       If the state court only considered state law, the federal court must ask whether state law, as

10  explained by the state court, is "contrary to" clearly established governing federal law.  *See Lockhart*

11  *v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001); *see also Hernandez v. Small*, 282 F.3d 1132, 1141

12  (9th Cir. 2002), *cert. denied*, 537 U.S. 851 (2000) (state court applied correct controlling authority

13  when it relied on state court case that quoted Supreme Court for proposition squarely in accord with

14  controlling authority).  If the state court, relying on state law, correctly identified the governing federal

15  legal rules, the federal court must ask whether the state court applied them unreasonably to the facts.

16  *See Lockhart*, 250 F.3d at 1232, n.7.

17       **B.    "Contrary to"**

18       While the "contrary to" and "unreasonable application" clauses often overlap, they have

19  independent meanings which may necessitate examining a petitioner's allegation under both standards.

20  *See, e.g., Van Tran v. Lindsey*, 212 F.3d 1143, 1149-50 (9th Cir. 2000), *overruled on other grounds,*

21  *Lockyer v. Andrade*, 538 U. S. 63, 70-73 (2003).  "Under the 'contrary to' clause, a federal habeas court

22  may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

23  Court on a question of law or if the state court decides a case differently than [the Supreme] Court has

24  on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Put

25  another way, a state court decision is "contrary to" clearly established Supreme Court precedent if it

26  "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts

27  a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and

28                                                    6

1 nevertheless arrives at a result different from [its] precedent.'" *Early v. Packer*, 537 U.S. 3, 8 (2002)

2 (per curiam) (quoting *Williams*, 529 U.S. at 405-06).

3      A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court

4 framework and applies it to the facts of a prisoner's case "would not fit comfortably within §

5 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406. Such a case should be analyzed under

6 the "unreasonable application" prong of § 2254(d). *See Weighall v. Middle*, 215 F.3d 1058, 1062 (9th

7 Cir. 2000).

8      **C.**     **"Unreasonable Application"**

9      "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

10 state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

11 unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.

12 Whether the state court's decision was unreasonable must be assessed in light of the record that court

13 had before it. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (per curiam). In examining whether the

14 state court's decision was unreasonable, the inquiry may require analysis of the state court's method

15 as well as its result. *Nunes v. Mueller*, 350 F.3d 1045, 1054 (9th Cir. 2003), *cert. denied*, 543 U.S.

16 1038 (2004). Additionally, evaluating whether a rule application was unreasonable requires

17 considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment

18 may be narrow; if it is more general, the state courts have more leeway. *Yarborough v. Alvarado*, 541

19 U.S. 652, 664 (2004).

20                                 **DISCUSSION**

21 **I.**     **Exhaustion**

22      Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings

23 either the fact or length of their confinement are required first to exhaust state judicial remedies, either

24 on direct appeal or through collateral proceedings, by presenting the highest state court available with

25 a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See*

26 28 U.S.C. § 2254(b), (c); *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987). It is undisputed that

27 Nguyen exhausted his state court remedies as to the claims raised in his petition.

28

**II.     Legal Claims**

Petitioner's seven claims for relief under § 2254 can be broken down into three sections: (A) Jury Instruction Errors; (B) Ineffective Assistance of Trial Counsel; and (C) Constitutional Challenges to the California Reasonable Doubt Instruction.

**A.     Jury Instruction Errors**

Nguyen claims that his due process rights to present his defense and to conviction only upon proof beyond a reasonable doubt under the Fifth, Sixth, and Fourteenth Amendments were violated when the trial court (1) failed to instruct the jury that evidence of the victim's assaultive character could be used to support Nguyen's defense claims; (2) incorrectly instructed the jury on the definition of assault; and (3) incorrectly instructed the jury on imperfect self-defense.  Pet. at 4.

**1.     Assaultive Character Instruction**

**a.     Background**

At trial, Nguyen argued that he acted in self-defense in the fight that caused Jeffery Rogers's death.  Pet'r Mem. at 4.  In support of his contention that Rogers was the aggressor, the defense introduced evidence that Rogers previously attacked another youth, once because he was "bored" and again the following day because he was "disappointed with his performance."  Pet'r Mem. at 6, RT 776. Defense counsel did not request, nor did the trial court give, an instruction directing the jury to use this evidence to support Nguyen's contentions that Rogers acted in conformity with his assaultive character during the fight or to support Nguyen's credibility as a witness by corroborating his version of the facts. Pet'r Mem. at 9.  In Petitioner's view, Rogers's assaultive character went "to the heart" of his self-defense claim and the lack of instruction constitutes failure to instruct on his theory of defense in violation of his due process rights.  Pet'r Mem. at 8-9.

The California Court of Appeal rejected this claim on direct appeal as follows:

[Nguyen]'s argument is without merit. The instructions are pinpoint instructions upon which the trial court has no sua sponte duty to instruct.

A pinpoint instruction is an instruction that "does not involve a 'general principle of law' as that term is used in the cases" but attempts to relate specific evidence in the case to an element of the crime, e.g., malice, or an affirmative defense, e.g., reasonable self-defense.  *People v. Saille* (1991) 54 Cal.3d 1103, 1120, 820 P.2d 588.)  A pinpoint

8

> instruction "relates particular facts to an element of the charged crime and thereby explains or highlights a defense theory. [Citation.]" (*People v. Mayfield* (1997) 14 Cal.4th 668, 778, 928 P.2d 485.) A trial court has no sua sponte duty to give pinpoint instructions. (Ibid.)
>
> [Nguyen]'s instructions were pinpoint instructions because they merely directed the jury on how to view specific evidence in relation to the elements of the offense and/or the affirmative defenses raised by defendant. Thus, in the absence a request by counsel, there was no sua sponte duty of the trial court to give them. (*People v. Mayfield*, supra, 14 Cal.4th 668, 778.)

Resp't Ex. 7 at 6-7.  The state court further opined that trial counsel's failure to request the instructions did not constitute ineffective assistance because defense counsel invited the jury to consider the evidence as reflecting upon Rogers's current behavior and there was nothing to prevent the jury from considering the evidence as demonstrating the victim's propensity.  *Id.* at 7.

### b.    Applicable Federal Law

As noted above, the threshold question for a federal court reviewing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 is what constituted clearly established federal law, as determined by the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.  *Earp*, 431 F.3d at 1182.   If the state court only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law.  *See Lockhart*, 250 F.3d at 1230.  The omission of an instruction is less likely to be prejudicial than a misstatement of the law.   *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). "Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an 'especially heavy burden.'"   *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson*, 431 U.S. at 155).

Under federal law, a criminal defendant is entitled to adequate instructions on the defense theory of the case.  *See Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000) (error to deny defendant's request for instruction on simple kidnaping where such instruction was supported by the evidence). However, a defendant is not entitled to have jury instructions raised in his or her precise terms where the given instructions adequately embody the defense theory, *see United States v. Del Muro*, 87 F.3d

9

1078, 1081 (9th Cir. 1996); *United States v. Tsinnijinnie*, 601 F.2d 1035, 1040 (9th Cir. 1979).  An instruction that merely highlights particular evidence that the defendant believes supports his claim is not a "theory of the defense" instruction.  *Del Muro*, 87 F.3d at 1081, s*ee also United States v. Felix-Gutierrez,* 940 F.2d 1200, 1211 (9th Cir. 1991) (proper theory of the defense instructions set forth the defendant's theory of the case on a fairly abstract level).  The significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given.  *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (quoting *Henderson*, 431 U.S. at 156).

### c.    **Analysis**

In this AEDPA case, Nguyen cannot establish that the state law regarding pinpoint instructions is "contrary to" federal law unless he cites clearly established Supreme Court authority for the proposition that the omission of such an instruction constitutes constitutional error.  This he has not done.  Instead, Nguyen cites *Kelly v. South Carolina*, 534 U.S. 246, 256 (2002), for the general proposition that a trial court has a duty to instruct the jury on a defendant's theory of defense.  Pet'r Mem. at 7-8.  This alone does not establish that adequate instruction on a theory of defense requires an instruction relating specific evidence to an element of a defense and Nguyen points to no case explaining that such an instruction is a "theory of defense" instruction.  To the contrary, as in *Del Muro*, Nguyen's proposed instruction is not an instruction on the defense theory of the case because it  merely highlights the evidence of Rogers's prior assaultive conduct and directs the jury to use the evidence in support of Nguyen's defense claims.  Furthermore, the facts in this case are distinguishable from the situation in *Kelly*.  There, the trial court had a duty to instruct because the petitioner requested at trial, and the trial court refused to give, an instruction to which the Petitioner was entitled under Supreme Court precedent.  *Kelly v. South Carolina*, 534 U.S. at 256.  Here, Nguyen identifies no authority for his position that a criminal defendant is entitled to an instruction on the relation of victim character evidence to the elements of a self-defense claim.  Thus, Nguyen has not established that the 'duty to instruct' in *Kelly* applies to this case.

Moreover, the Ninth Circuit has held that criminal defendants are not even entitled to *introduce*

specific acts evidence of a victim's violent character, like that introduced here, to support a self-defense claim.  *See United States v. Keiser*, 57 F.3d 847 (9th Cir. 1995), *cert. denied,* 516 U.S. 1029 (1995) ("victim character evidence introduced to support a claim of self-defense or defense of another should be *limited to reputation or opinion evidence*").  Since there is no federal right to present such evidence in support of a defense, it cannot be said that failure to instruct on the use of such evidence is "contrary to" clearly established federal law.  Accordingly, Nguyen failed to show that the California law regarding pinpoint instructions, as explained by the state court, is "contrary to" clearly established governing federal law and, as a result, he is not entitled to federal habeas relief on this ground.

Second, Nguyen argues that the state court opinion was contrary to federal law because its "rejection of Petitioner's [assaultive character instruction] claim rested substantially, if not entirely, on its faulty conclusion that any error was harmless because defense counsel had been permitted to argue the evidence to the jury."  Pet'r Mem. at 11.  This characterization of the state court opinion is incorrect.  The state court denied Nguyen's instructional error claim on the ground that, under state law, a defendant is not entitled to an instruction relating specific evidence to elements of a claim or defense, absent a request from counsel.  Resp't Ex. 7 at 7.  The state court discussed the potential curative effect of defense counsel's argument only in the context of Nguyen's ineffective assistance claim.  Thus, the state court's discussion of Nguyen's jury instruction claim cannot be said to be contrary to federal law on the basis that it considered the arguments of counsel as a surrogate for court instruction with respect to Nguyen's related, but distinct, ineffective assistance of counsel claim.  Accordingly, this claim for relief is DENIED.

### 2.    Assault Instruction

#### a.    Background

The trial court instructed the jury with CALJIC No. 9.00, California's standard jury instruction on assault, which reads:

> In order to prove an assault, each of the following elements must be proved: One, a
> person willfully and unlawfully committed an act which, by its nature would probably
> and directly result in the application of physical force upon another person. And two,

11

1    at the time the act was committed, the person intended to do an act that was
2    substantially certain to result in the application of physical force upon another person.

3    Resp't Ex. 7 at 7.

4    Citing *People v. Williams*, 26 Cal. 4th 779, 790 (Cal. 2001), Nguyen argued on appeal that this

5    instruction is constitutionally infirm because it misstates the necessary subjective intent and instead

6    describes an objective recklessness or negligence standard as the mens rea element of assault.  The state

7    court rejected this argument as follows:

8         *People v. Williams* held that CALJIC No. 9.00 was potentially ambiguous.  *Williams*
          observed that "a jury could conceivably convict a defendant for assault even if he did
9         not actually know the facts sufficient to establish that his act by its nature would
          probably and directly result in a battery."  Nonetheless, *Williams* reasoned that "any
10        instructional error is largely technical and is unlikely to affect the outcome of most
          assault cases, because a defendant's knowledge of the relevant factual circumstances is
11        rarely in dispute."  *Williams* held that its observation applied to the facts before it; the
          court found that any minor ambiguity in the instruction was harmless beyond a
12        reasonable doubt.

13        The evidence overwhelmingly demonstrated defendant's knowledge of those facts
          establishing that his act by its very nature would directly, naturally, and probably result
14        in a battery.  Defendant swung a two-foot sword in a group of people during a melee.
          Defendant testified that he thought the sword made contact with people "Because when
15        I was swinging around it, [sic] could have hit someone."   The evidence plainly
          demonstrated that defendant was aware of the predicate fact that he was swinging a
16        two- foot long sword at several people nearby.  He was therefore "aware of the facts
          that would lead a reasonable person to realize that a battery would directly, naturally,
17        and probably result from his conduct."  The ambiguity within CALJIC No. 9.00 was
          harmless beyond a reasonable doubt.
18

19   Resp't Ex. 7 at 7-8 (citations omitted).

20                          **b.        Applicable Federal Law**

21        A jury instruction that omits an element of an offense is constitutional error subject to "harmless

22   error" analysis.  *See Neder v. United States*, 527 U.S. 1, 8-11 (1999) (direct review); *Evanchyk v.*

23   *Stewart*, 340 F.3d 933, 940 (9th Cir. 2003) (§ 2254 case).  Harmless error applies whether the error is

24   characterized as a misdescription of an element of an offense in a jury instruction, or as an omission

25   of the element.  *See California v. Roy*, 519 U.S. 2, 5 (1996) (per curiam).  When a state court addresses

26   a harmless-error claim on direct review, the clearly established federal law that it must apply is the

27

28
                                              12

1   *Chapman v. California*, 386 U.S. 18, 24 (1967), harmless beyond a reasonable doubt standard.  *Medina*

2   *v. Hornung*, 372 F.3d 1120, 1125 (9th Cir. 2004) (a state court may dispose of most constitutional

3   errors by finding them harmless under the Supreme Court's decision in *Chapman* or harmless under an

4   equivalent state law standard).

5       If the state court disposed of a constitutional error as harmless under an appropriate standard

6   of review, federal courts must, for purposes of application of the "unreasonable application" clause of

7   § 2254(d)(1), first determine whether the state court's harmless error analysis was objectively

8   unreasonable.  *Medina*, 386 F.3d at 878.  In other words, the federal court must decide whether it was

9   unreasonable for the state court to determine that the State had "proved beyond a reasonable doubt that

10  the error complained of did not contribute to the verdict."  *Chapman*, 386 U.S. at 24.  If the federal

11  court determines that the state court's harmless error analysis was objectively unreasonable, and thus

12  an unreasonable application of clearly established federal law, the federal court then proceeds to the

13  *Brecht* analysis.  *Medina*, 386 F.3d at 877.  A trial error is considered harmless under *Brecht* only if

14  the actual jury in the case would have reached the same verdict absent the error. *Gray v. Klauser*, 282

15  F. 3d 633, 654-55 (9th Cir. 2002), *judgment vacated on other grounds*, 537 U.S. 1041 (2002).

16              **c.        Analysis**

17

18       As the California Court of Appeal recognized, CALJIC 9.00 ambiguously describes the mens

19  rea element of assault.  Accordingly, the instruction is constitutionally erroneous and subject to

20  harmless error review.  The state court properly applied a harmless-beyond-a-reasonable-doubt error

21  standard that comports with the *Chapman* standard.  Resp't Ex. 7 at 7; cf. *Chapman*, 386 U.S. at 24

22  (harmless if the State proved beyond a reasonable doubt that the error complained of did not contribute

23  to the verdict).  Additionally, the decision did not conflict with a materially indistinguishable Supreme

24  Court case.  Thus, the state court opinion is not "contrary to" clearly established governing federal law.

25       Further, the state court's decision was not an objectively unreasonable application of the

26  *Chapman* standard.  In determining that any instructional error was harmless beyond a reasonable

27  doubt, the state court observed the undisputed fact that Nguyen intentionally swung a two foot long

28

sword in close proximity to other people.  Resp't Ex. 7 at 7-8.  Moreover, the court observed that Nguyen admitted his awareness that he could have hit someone while wielding the sword.  Resp't Ex. 7 at 8.  This evidence strongly supports a finding that Nguyen had knowledge of the facts that an error-free instruction would have directed the jury to find.  Thus, it was not objectively unreasonable for the state court  to conclude that the State proved beyond a reasonable doubt that the instructional error did not contribute to Nguyen's assault conviction.

Nguyen asserts that reversal is required under the *Brecht* "substantial and injurious effect" standard because no one can be confident that the instructional error did not contribute to his conviction of assault with a deadly weapon on Kurtis Helm.  Pet'r Mem. at 14.  He contends that his testimony that he did not intend to hit anyone and later, was not sure whether he had hit someone, casts doubt on whether he subjectively knew that his actions would result in battery.  *Id.*  This argument overlooks the deferential AEDPA analysis that a federal habeas court must first apply.  As discussed above, this court may not analyze a state court's harmless error determination under *Brecht* unless it first determines that the state court's application of *Chapman* (or state equivalent) was objectively unreasonable under the AEDPA.  The state court's opinion was not objectively unreasonable under that standard.  Accordingly, this claim for relief is DENIED.

### 3.    Imperfect Self-Defense Instruction

#### a.    Background

The trial court, without objection, instructed the jury with CALJIC No. 5.17:

> A person, who kills another person in the actual but unreasonable belief in the necessity to defend against imminent peril to life or bodily injury kills unlawfully, but does not harbor malice aforethought and is not guilty of murder.
>  . . . .
> However, this principle is not available and malice aforethought is not negated if the defendant, by his unlawful or wrongful conduct, created the circumstances which legally justified his adversary's use of force, attack or pursuit.

Resp't Ex. 7 at 8.

On direct appeal Nguyen argued that this instruction is unconstitutionally overbroad and ambiguous because it does not explain the legal meanings of the terms "unlawful or wrongful conduct"

1  and "legally justified."   Pet'r Mem. at 15.  Accordingly, he argues, the jury may have found the

2  imperfect self-defense defense inapplicable on the improper basis that Nguyen acted wrongfully by

3  showing up to a planned fight or wielding a sword even if such conduct would not have "legally

4  justified" Rogers's attack. Pet'r Mem. at 15. Nguyen asserts that the instruction erroneously suggests

5  that *any* wrongful or unlawful act of a defendant renders the doctrine of imperfect self-defense

6  unavailable when, in fact, the terms carry a more narrow legal meaning.  Pet'r Memo at 16.  Petitioner

7  cites the following cases defining the more narrow legal meaning of these terms: *In re Christian S.,* 7

8  Cal.4th 786, 773 n.1 (1994), defining "wrongful conduct" as the "initiation of physical assault of the

9  commission of a felony;" and *People v. Hecker,* 109 Cal. 451, 463 (1895) for the proposition that

10  "wrongful" conduct means only conduct which poses an imminent threat of physical harm. Pet'r Mem.

11  at 15, 16.

12       Although Nguyen did not object to the instruction at trial, the California Court of Appeal

13  considered whether the trial court had a duty to sua sponte clarify the instruction for the jury.  The court

14  held that such a duty did not exist and Nguyen's failure to object to the instruction at trial constituted

15  procedural default:

> 16  Since CALJIC No. 5.17 correctly described the applicable law, it was up to defendant to request clarification or amplification of the instruction.  It is well established that
> 17  if "the standard instruction correctly and adequately explained the applicable law to the jury, . . . the court was not required to rewrite it sua sponte.  'The trial court cannot
> 18  reasonably be expected to attempt to revise or improve accepted and correct jury instructions absent some request from counsel.' [Citation.]" (*People v. Kelly* (1992) 1
> 19  Cal.4th 495, 535, 822 P.2d 385.)  Having failed to request clarification, defendant cannot now complain about the wording of the instruction. (*People v. Bolin* (1998) 18
> 20  Cal.4th 297, 328, 956 P.2d 374.)

21  Resp't Ex. 7 at 8.

22       The state court further opined that there was no reversible error because it was not reasonably

23  likely that the jury interpreted any ambiguity in the instruction as mandating rejection of Nguyen's

24  defense and Nguyen would not have been prejudiced even if the jury had misunderstood the

25  instruction.  Resp. Ex. 7 at 8-11.

26            **b.**    **Applicable Federal Law**

27       A federal court will not review questions of federal law decided by a state court if the decision

28

also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In the context of direct review by the United States Supreme Court, the "adequate and independent state ground" doctrine goes to jurisdiction; in federal habeas cases, in whatever court, it is a matter of comity and federalism. *Id.* The procedural default rule is a specific instance of the more general "adequate and independent state grounds" doctrine. *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994).

Where the state court decision rests on clearly alternate grounds, one invoking a state procedural bar and the other addressing the merits, the state procedural ground is still sufficiently independent to preclude habeas review. *See Bargas v. Burns*, 179 F.3d 1207, 1214 (9th Cir. 1999); *see also Moran v. McDaniel*, 80 F.3d 1261, 1269 (9th Cir. 1996) (concluding that the Nevada Supreme Court rested its dismissal of petition on independent state procedural grounds because it stated that any discussion of merits was strictly for purpose of demonstrating that petitioner's procedural defaults could not be overcome by showing of cause and prejudice). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

### c.      Analysis

The State asserts that this claim is procedurally defaulted under California's contemporaneous objection rule because, as the state court held, Nguyen failed to request clarification of the instruction at trial. Resp't Mem. at 10. The state court's opinion discussed both Nguyen's procedural default—failure to request clarification of the instruction at trial—as well as the merits of the claim, to demonstrate that Nguyen was not prejudiced by the instruction. Resp't Ex. at 7-11. Although the state court reached the merits, under *Bargas* the state procedural ground is still sufficient to bar federal habeas review. Nguyen has demonstrated neither cause for the default and actual prejudice as a result of the alleged violation of federal law, nor that failure to consider the claims will result in a fundamental miscarriage of justice. Thus, this Court cannot reach the merits of the claim and this claim

1    for relief is DENIED.

2          **B.**     **Ineffective Assistance of Trial Counsel**

3          Petitioner claims that trial counsel rendered ineffective assistance in violation of the Sixth

4    Amendment because counsel (1) failed to request the victim's assaultive character instructions and

5    failed to request modification of the standard California instructions on assault and imperfect self-

6    defense, and (2) failed to object to the inadmissible lay testimony of a police officer regarding

7    Nguyen's credibility.  Pet'r Mem. at 18, 20.  After setting forth the applicable legal principles, the

8    Court will analyze these claims in turn below.

9             **1.**     **Applicable Federal Law**

10          A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

11    Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.

12    *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of

13    ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

14    adversarial process that the trial cannot be relied upon as having produced a just result.  *Id.*  The

15    *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly

16    established Federal law, as determined by the Supreme Court of the United States" for the purposes of

17    28 U.S.C. § 2254(d) analysis.  *Dows v. Wood*, 211 F.3d 480, 484 (9th Cir. 2000).  To  prevail on a

18    Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, he must

19    establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of

20    reasonableness" under prevailing professional norms.  *Strickland*, 466 U.S. at 687-88.  This requires

21    showing that counsel made errors so serious that counsel was not functioning as the "counsel"

22    guaranteed by the Sixth Amendment.  *See Strickland*, 466 U.S. at 687.[2]  The relevant inquiry is not

23    what defense counsel could have done, but rather whether the choices made by defense counsel were

24    reasonable.  *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of

25    
26         [2]     A habeas petitioner has the burden of showing through evidentiary proof that counsel's performance was deficient.  *See Toomey v. Bunnell*, 898 F.2d 741, 743 (9th Cir.), *cert. denied*, 498

27    U.S. 960 (1990); *see also Rios v. Rocha*, 299 F.3d 796, 813 n.23 (9th Cir. 2002) (rejecting two ineffective assistance of counsel claims based on petitioner's failure to produce evidence of prejudice).

28

counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.

Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Accordingly, where the defendant is challenging his conviction, the appropriate question is "'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Luna v. Cambra*, 306 F.3d 954, 961 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 695). The test for prejudice is not outcome-determinative, *i.e.*, defendant need not show that the deficient conduct more likely than not altered the outcome of the case; however, a simple showing that the defense was impaired is also not sufficient. *Strickland*, 466 U.S. at 693. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

### 2.   Jury Instruction Errors

#### a.   Background

Petitioner argues that he was denied effective assistance when his trial counsel failed to request the assaultive character instruction and failed to request modification of the standard California instructions on assault and imperfect self-defense. Pet'r Mem. at 18. The state court did not address the first prong of the *Strickland* analysis regarding the claims based on instructional error. Instead, it concluded that Nguyen could not establish prejudice. With respect to counsel's failure to request the assaultive character instruction, the state court reasoned as follows:

> According to defendant, counsel was ineffective for not requesting the [assaultive character] instructions. We disagree. To establish ineffective assistance of counsel, a defendant must demonstrate, among other things, that there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citations.] (*People v. Hart* (1999) 20 Cal.4th 546, 624, 976 P.2d 683.)
>
> In this case, there is no reasonable probability a different result would have occurred had the instructions been given. The evidence about Rogers's prior assaultive conduct was

18

presented to the jury. During closing argument, defense counsel discussed Rogers's prior conduct, and invited the jury to consider that past conduct as reflecting upon Rogers's current behavior. Moreover, there was nothing to prevent the jury from considering the evidence as demonstrating Rogers's propensity. Consequently, even if counsel should have requested the instructions, the failure to do so was plainly harmless.

Resp't Ex. 7 at 6-7. The state court also denied Nguyen's claims that failure to request modification of the assault (CALJIC No. 9.00) and imperfect self-defense (CALJIC No. 5.17) instructions constituted ineffective assistance. Since it already determined that any instructional error was harmless, the state court reasoned that Nguyen could not establish prejudice:

Defendant also raises ineffective assistance arguments based upon CALJIC No. 9.00 and No. 5.17. With respect to these instructional error arguments, we have already concluded that any error was harmless. It follows that any claim of ineffective assistance of counsel based upon those same errors is also harmless.

Resp't Ex. 7 at 11 n.4.

### b.    The State Court Opinion is Not 'Contrary To' *Strickland*

The state court did not indicate whether it considered the *Strickland* prejudice standard in making its harmless error determinations. However, it found that any errors were harmless under standards which meet the demands of *Strickland*. First, in evaluating trial counsel's failure to request an assaultive character instruction, the state court applied a state prejudice standard that is identical to the one set forth in *Strickland*. Resp't Ex. 7 at 6-7. *See Strickland*, 466 U.S. at 694 (an error is prejudicial if there is "a reasonable probability that [but for the error] the result of the proceeding would have been different").

Second, the state court found that any error in CALJIC No. 5.17 was harmless because it was "not reasonably likely that the jury would interpret the instructions as mandating rejection of defendant's defense merely because he was holding the sword." Resp't Ex. 7 at 8 (emphasis added). The *Strickland* Court used the terms "reasonably likely" and "reasonable probability" interchangeably in discussing the prejudice standard. *See, e.g., Strickland*, 466 U.S. at 969 ("a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would *reasonably likely* have been different absent the errors"). Finally, as discussed above, the state

19

court reasonably concluded that any ambiguity in CALJIC No. 9.00 was harmless beyond a reasonable doubt. Resp't Ex. 7 at 8. A conclusion that, beyond a reasonable doubt, the error complained of did not contribute to the verdict meets the demands of the *Strickland* standard that there be no reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. Thus, it cannot be said that the state court applied a standard that is "contrary to" governing federal law.

### c.      The State Court Reasonably Applied *Strickland*

Nguyen has the burden of demonstrating that the state court's decision is objectively unreasonable, not only that it applied *Strickland* incorrectly. *See Visciotti*, 537 U.S. at 25. For the purpose of assessing the reasonableness of a state court's application of federal law under AEDPA, state courts have more leeway in reaching a particular outcome when they apply general rules of law. *Alvarado*, 541 U.S. at 664. The *Strickland* test, by its nature, is general and not subject to mechanical application. *Strickland*, 466 U.S. at 696.

### (1)      Assaultive Character Instruction

The state court based its conclusion that Nguyen was not prejudiced by trial counsel's failure to request an assaultive character instruction on the facts that defense counsel drew the jury's attention to the permissible use of the evidence of Rogers's prior assaultive behavior as showing propensity for aggression and nothing prevented the jury from considering the evidence as propensity evidence. Although the Supreme Court has held that the arguments of counsel may not substitute for an instruction from a judge, reason dictates that a defendant must be entitled to the instruction before this rule applies. As discussed above, Nguyen failed to identify authority to support his argument that he had a constitutional right to the 'pinpoint' assaultive character instruction. Thus, the appellate court did not improperly consider counsel's argument as an indication that Nguyen was not prejudiced by counsel's failure to request the instruction.

Moreover, it was reasonable for the state court to find that Nguyen was not prejudiced on the ground that nothing prevented the jury from considering the evidence as demonstrating Rogers's

1    propensity for aggression.  In essense, the assaultive character instruction would only direct the jury

2    to do what it is presumed to do already—to infer bad character from prior bad acts and assume that

3    the actor acted in conformity with that bad character on a particular occasion.  *See, eg. Marshall v.*

4    *Lonberger*, 459 U.S. 422, 449 (1983) ("The objection to [prior bad acts] evidence is not that the

5    proposed inference is illogical.  The objection is rather that the inference is so attractive that it will

6    overwhelm the factfinder and create an unwarranted presumption of guilt").  With respect to the

7    assaultive character instruction, the state court "considered the proper factors and reached a reasonable

8    conclusion." *See Alvarado*, 541 U.S. at 669.  That being the case, this claim for relief is DENIED.

### (2)    CALJIC 9.00: Assault Instruction

As discussed above, the state court's decision that Nguyen was not prejudiced by CALJIC No.
9.00's misdescription of the mens rea element of assault was not an objectively unreasonable
application of a harmless-beyond-a reasonable-doubt prejudice standard.  Similarly, in light of the
evidence demonstrating Nguyen's awareness of the close proximity of other people to his sword, no
reasonable probability exists that, but for counsel's failure to request modification of the instruction,
the jury would have found that Nguyen did not have knowledge of facts indicating that his actions
would probably and directly lead to a battery.  Accordingly, it was reasonable for the state court to
conclude that Nguyen was not prejudiced by trial counsel's failure to request the instruction.  Thus,
claim for relief is DENIED.

### (3)    CALJIC 5.17: Imperfect Self-Defense Instruction

The state court's conclusion that Nguyen was not prejudiced by the  ambiguous language in
the standard instruction on imperfect self-defense was not unreasonable.  It wrote:

> Lack of prejudice is also demonstrated by the other instructions provided. Jury
> instructions must be viewed as a whole. (*People v. Kelly* (1992) 1 Cal.4th 495, 526-
> 527, 822 P.2d 385.) Here, the jury was instructed under CALJIC No. 5.32, regarding
> defense of others. CALJIC No. 5.32 provided that defendant was entitled to use "all
> force and means" defendant believed to be "reasonably necessary" and "which would
> appear to a reasonable person, in the same or similar circumstances, to be necessary
> to prevent the injury which appears to be imminent."  The jury was instructed under

CALJIC No. 5.31.  CALJIC No. 5.31 stated that "An assault with the fists does not justify the person being assaulted in using a deadly weapon in self-defense unless that person believes and a reasonable person in the same or similar circumstances would believe that the assault is likely to inflict bodily injury upon [him]."  The jury was also instructed that exhibiting a deadly weapon in a "rude, angry, or threatening manner" constitutes a misdemeanor, except when used in self-defense. These instructions correctly stated the law, and defendant does not contend otherwise. Viewed together, it is not reasonably likely that the jury would interpret the instructions as mandating rejection of defendant's defense merely because he was holding the sword. (*See People v. Brown* (2000) 77 Cal.App.4th 1324, 1335.)

Resp. Ex. 7 at 8-11.

As the state court observed, the other jury instructions regarding self-defense demonstrate that the jury was properly instructed on the circumstances which legally justify the use of force in self-defense or defense of another.  Accordingly, it was not objectively unreasonable for the state court to conclude that the jury understood that the conditions which would entitle Nguyen to act in self-defense also applied to whether Nguyen's alleged assailant was entitled to do the same.  Additionally, it is not reasonably probable that the jury denied Nguyen's imperfect self-defense claim on the ground that he acted 'wrongfully' in carrying a sword because the instructions clearly indicate that it is not a crime to exhibit a deadly weapon if it is done in self-defense.  Thus, the state court's opinion is not an objectively unreasonable application of the *Strickland* prejudice prong and this claim is DENIED.

### 3.      Sergeant Sequeria's Lay Opinion Testimony

Nguyen argues that trial counsel made a significant error when it failed to object to, or move to strike, inadmissible opinion testimony of Sergeant Sequeria regarding Nguyen's cedibility.  Pet'r Mem. at 21.  Nguyen raised this issue on direct appeal and the state appellate court ruled as follows:

At trial, the prosecutor asked Sergeant Sequeira whether he believed defendant was telling the complete truth when defendant claimed to have acted in self-defense or defense of Phi. Sergeant Sequeira answered, "no." Defendant says defense counsel's failure to object to Sequeira's response was ineffective assistance of counsel. We disagree.

There was a legitimate tactical reason for not objecting. Defense counsel argued that Sergeant Sequeira had a preconceived belief that defendant was guilty of murder. Defense counsel claimed Sergeant Sequeira intentionally misrepresented and

22

1   misinterpreted defendant's interview responses to get defendant to incriminate himself.
2   Thus, one of defense counsel's themes in trying to neutralize the harmful content of
    defendant's interview was to argue that Sergeant Sequeira purposely tried to get
3   defendant to incriminate himself because Sergeant Sequeira found defendant not
    credible. Consequently, allowing Sergeant Sequeira to testify that he did not believe
4   defendant only fostered the defense theme of officer bias.

5   When the appellate record fails to disclose why counsel acted or failed to act in the
    manner challenged, the judgment will be affirmed unless there simply could be no
6   satisfactory explanation for counsel's conduct. (*People v. Hart* (1999) 20 Cal.4th 546,
    623-624, 976 P.2d 683.) Here, there could be a satisfactory explanation for counsel's
7   failure to object and therefore we must reject defendant's claim of ineffective
    assistance of counsel.

8   (Resp't Ex. 7 at 11.)

9

10      The Court of Appeals reasonably concluded that trial counsel's decision to withhold objection

11  to Sequeria's testimony constituted reasonable trial tactics and therefore did not fall below the

12  standard of reasonably competent counsel.  *See Strickland*, 466 U.S. 668, 687 (1984) (Judicial scrutiny

13  of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's

14  conduct falls within the wide range of reasonable professional assistance.)  Under the circumstances

15  of this case, as explained by the state appellate court, defense counsel's decision not to object to the

16  testimony was reasonable in light of the defense theory that Sergeant Sequeira had a preconceived

17  belief that defendant was guilty of murder. The state appellate court did not unreasonably apply

18  federal law in rejecting this claim.  Thus, this claim for relief is DENIED.

19      **C.      Constitutional Challenges to the Reasonable Doubt Instruction**

20      Nguyen sets forth two challenges to the standard California instruction on reasonable doubt.[3]

21

22  _____

23      [3]CALJIC 2.90 reads:

24      A defendant in a criminal action is presumed to be innocent until the contrary is proved,
        and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled
25      to a verdict of not guilty.    This presumption places upon the people the burden of
        proving him guilty beyond a reasonable doubt.  Reasonable doubt is defined as follows:
26      It is not a mere possible doubt, because everything relating to human affairs is open to
        some possible or imaginary doubt.  It is that state of the case which, after the entire
27      comparison and consideration of the evidence, leaves the minds of the jurors in that
        condition that they cannot say they feel an abiding conviction of the truth of the charge.

28                                          23

1  First, he argues that he was deprived of his federal constitutional right to equal protection when the

2  trial court instructed the jury with CALJIC No. 2.90.  Pet'r Mem. at 22.  The Court of Appeal rejected

3  this claim on direct appeal as follows:

> Defendant also argues that CALJIC No. 2.90 violates equal protection. He relies upon *Bush v. Gore (2000)* 531 U.S. 98, 148 L. Ed. 2d 388, 121 S. Ct. 525 to argue that "If an undefined standard like the 'clear intent of the voter' is so non-specific that allowing experienced election officials employing that standard across the State of Florida to assess so-called 'under vote ballots' in an election context violates the rights of voters to equal protection under the law, then the essentially standard-less phrase regarding proof beyond a reasonable doubt set froth in CALJIC No. 2.90 that is given to laypersons serving on juries must also run afoul of the same constitutional equal protection guarantee." We disagree.
>
> *Bush v. Gore* applied only to the unique circumstances relating to the 2000 election. (*Bush v. Gore, supra,* 531 U.S. at p. 109 ["our consideration is limited to the present circumstances, for the problem of equal protection in election processes generally presents many complexities"].)
>
> In any event, a prerequisite for an equal protection challenge is a showing that two or more similarly situated groups are treated unequally.  In *Bush v. Gore, supra,* the *Bush* court perceived an equal protection problem in the fact that different standards would be applied by various voting precincts in Florida, or even by the same precinct, because the "intent of the voter" concept was not by itself a clear standard and was not adequately defined. (*Bush v. Gore,* supra, 531 U.S. at p. 105-108.)
>
> There is no such analogous problem posed by CALJIC No. 2.90. CALJIC No. 2.90 defines reasonable doubt. As stated above, settled case law approves that definition. This same definition of reasonable doubt is provided in criminal cases to all juries of the state of California. Since all juries receive the identical reasonable doubt language, there is obviously no arbitrary distinction made in the instruction. Consequently, CALJIC No. 2.90 does not offend equal protection.

Resp't Ex. 7 at 13-14.

The state court opinion is neither "contrary to" nor an "unreasonable application of" clearly

established federal law.  Nguyen's entire equal protection argument rests on the Supreme Court's

opinion in *Bush v. Gore,* 531 U.S. 98, 109 (2002).  Pet'r Mem. at 22-26.  As the Court of Appeal

correctly noted, the United States Supreme Court limited its holding in *Bush v. Gore* to the

circumstances relating to the 2000 election. *Bush,* 531 U.S. at 109.  Accordingly, *Bush v. Gore* does

not constitute "clearly established federal law" for purposes outside of the 2000 election and Nguyen's

claim for federal habeas relief is DENIED.

24

Second, Nguyen asserts that he was denied due process when the trial court instructed the jury with CALJIC No. 2.90. Pet'r Mem. at 26. Yet, he states that "Petitioner acknowledges that the claim set forth herein has been rejected by the Ninth Circuit Court of Appeals in *Lisenbee v. Henry* [166 F.3d 997 (9th Cir. 1999), *cert. denied,* 528 U.S. 829 (1999)]. However, the matter has never been considered by the Ninth Circuit en banc, and petitioner believes that it has not been finally resolved by the United States Supreme Court." Pet'r Mem. at 26 n7. If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, by definition, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. *See, e.g.*, *Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004). Thus, Nguyen has not asserted a claim for federal habeas relief and this claim for relief is DENIED.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED as to all claims.


IT IS SO ORDERED

March  21, 2007

_Saundra B Armstrong_
Saundra Brown Armstrong
United States District Judge